for the morning yes your honor the honorable the judges of the united states court of appeals for the eighth circuit hear ye hear ye hear ye the united states court of appeals for the eighth circuit is now in session all persons having business before this honorable court are now drawn to air and they shall be heard god save the united states and this honorable court very well good morning uh judge locan is the presiding judge on this panel but because he's participating only by audio he asked that i preside at the session this morning so welcome to both council thank you for appearing this way and madam clerk would you please call the case for argument case number 20-3126 the district of minnesota angela craig et al versus tyler kissner very well mr riley we'll hear from you first thank you your honor may it please the court i am richard riley on behalf of the appellant tyler kissner and i would like to reserve four minutes for rebuttal you may but the time will continue to i understand your honor thank you the state of georgia is about to conduct two special elections for the u.s senate council i wish you hadn't started with that because but it will take us to heart of the matter the 17th amendment elevates state law over federal law on vacancies period period period i could give you many examples trust me article one of the constitution does the opposite it subordinates state law to the federal law on vacancies why doesn't the actual case you're starting the two senate seats you're talking about actually help your opponent and prove his case well i i think your honor we're both in this case and what they're relying on in georgia is the statutory authorization state statute go ahead well it's actually the federal statute to usc section 8 and remember section 7 is uh for itself under its elections clause power but in section 8a congress is giving it back it's an express authorization of authority and i think it's undisputed among the parties here that if the uh scenario qualifies under section 8a it's not going to be preempted by section 7 so this is not a traditional preemption case in the sense that we're looking at a conflict between a state statute in section 7 like in foster against love but rather we're asking a question of statutory interpretation of whether the elements under section 8a are satisfied and those two elements are a vacancy and the other factor is a failure to elect and so i think i'll just start with the vacancy factor if i may it is beyond dispute that by operation of minnesota law and without a federal injunction there will in inevitably be a vacancy come january in the second congressional seat that's a point that plaintiffs not only concede they emphasize they actually go so far as to call it irreparable harm where we have a although we have something of a disagreement on that point it underscores the agreement on the part of all parties that there will be a vacancy the plaintiffs respond that there is no current vacancy but this misreads the statutory text doesn't require that there be a vacancy at the time of the election at the time prescribed by law that phrase modifies the failure to elect element and it wouldn't make any sense to read the statute any other way because the failure to elect has to occur first and the vacancy has to occur second because of the causation standard that's right there in the statutory text and also because we're talking about the context of vacancy in office and of course the way that term limits work you would virtually never have a vacancy at the time of the failure to elect that would occur a few months down the road when the terms begin that's the holding of the Busby decision we think it's both binding and if not eminently persuasive on this point and so the vacancy element doesn't seem to be particularly difficult in this case the plaintiffs focus more fundamentally on the failure to elect element but the phrase failure to elect necessarily depends on state election law because there is no federal election code counsel in the love case the supreme court says they're not going to allow word play on what's a failure to elect why isn't this word play well it said it's not going to allow word play in the context of preemption i don't think the case addressed failure to elect under section 8 directly and it certainly wasn't part of its holding but more fundamentally to your point your honor what about the what about the footnote i thought the footnote that's what the footnote addressed well but the footnote simply said on section 8 i think you're referring to the footnote that referred to the legislative history was that there was some legislative history indicating that a failure to elect would refer to majority vote requirements and states uh but i would point to footnote four in the same decision that emphasized the narrowness of the holding in that decision which uh expressly said that uh it wasn't going to rule out the possibility that states would use non-traditional mechanisms and remember that's as the section 7 i think we're even further afield from that case when we're talking about section 8a which at best was addressed in dictum in that case and i would especially emphasize that the only thing the court said about it was to note the legislative history and of course we know that the statutory analysis doesn't begin and end with the legislative history it begins and ends with the text if the text is clear the text here is clear and it's clear in pointing the court to independent principles of state law it's not creativity it's not wordplay it's really the only thing that this phrase could possibly mean and tellingly the plaintiffs haven't really offered this court something else that it might mean they really seem to read it out of statute entirely if what is the uh mr reilly what is the limiting principle on your argument as to what a state may declare an exigent circumstance and cancel an election the overarching limiting principle is in the public citizen case which said a state can't manufacture a failure to elect in order to evade the default election day i think there are several factors that would all have to be satisfied for this court to conclude that section 8a would be triggered the most important one that i think will be dispositive in almost every case is that it's a generally applicable law the state has to drink its own poison if the state wants to declare a failure to elect in a congressional case it has to be willing to apply the same standard to its state races recall that this statutory wait wait where's that anywhere that they have to apply the same state most states have completely different systems on filling vacancies for oh we won't go there but but just just tell me where you get that it has to be the same law not not for filling vacancy your honors but for declaring a failure to elect when is the election a failure okay and the point here minnesota statute 204b 13 says that a election marred by the death of a major party candidate on the eve of an election is inconclusive it needs to be redone that's true for the state legislative races all 201 of them that were on the ballot last week it's true for the gubernatorial race the attorney general so on and so forth and so right off the bat because it's a generally applicable definition of fair to elect that's right where it is in the statute literally the meaning of the statute failure to elect so is that the only limiting principle as long as there's a generally applicable rule the state can cancel an election for whatever reason it deems appropriate no your honor i think it's the most important one because it disincentivizes mischief but the court could go beyond that and i think it would be justified in looking at other factors including whether it's beyond the state's ability to produce that was emphasized in the public citizen case i think it would also have to be rare we know that failures to elect are a rare occurrence so if this is something that is likely to happen very often i think a federal court would have a justification to step in it would have to be election related related to the election and i think the court uh well go ahead your honor well some of that rarity and related to an election i've got those go ahead was there anything else and not and not intended to subvert the default election day in other words it really is a special election procedure not a default election procedure as was the case in foster against love and you have all of that here minnesota is drinking its own poison it will apply this rule no matter which uh race is is marred by this council it's i know i just looked statute only says partisan offices does that change your argument it only applies when the partisan's offices are at stake no your honor because that's a broad swath of offices and it's also not an unusual distinction that occurs in state election laws most states distinguish partisan offices from non-partisan offices it would make a lot of sense to have a major party rule governing so our circuit in our circuit there's a different rule for the nebraska legislature than minnesota legislature right the rest is non-partisan elected go ahead the definition of failure to elect is going to mean different things in different places and that's not just true in this circuit that's true right now across the nation today michigan is sending the winner of a senate race with 49.8 of the vote to the senate georgia is not there is already a patchwork of laws defining a failure to elect and i would emphasize we're talking about the phrase failure to elect we're not talking about a patchwork of different default election dates the standard of uniformity is in section 7 but section 8a in giving back to the states gives flexibility the states and authority to set the times of special elections doesn't place a limit on that authority and there's no reason why there would have to be a national standard of failure to elect and our respectful submission is that it wouldn't even be a good idea it's not something that's inherent in the phrase special failure to elect and i would just to give you an analogy and if you were reading in a sports magazine you saw the phrase failure to win you would understand in the context of an athletic contest that that would incorporate and refer the reader to the rules of whatever game might be at issue you win in cricket differently than you win in baseball and i think we have a similar point here there's really three important elements that demonstrate to this court why it should look to state law principles and not try to craft some type of a uniform national standard the first of course is that we have a legal concept it's inherently legal whether an election succeeds or whether it fails the second is that there is not a uniform election code to tell us that answer congress has some election laws but it was never contemplated that congress would have the the comprehensive set of election laws and that's certainly not the council i think that's not true because doesn't it say congress can change anything a state does about it does your honor but that's sort of a um in effect a corrective measure in the case of rucho against common cause the supreme court recently described this as the opportunity for congress to come in and correct abuses in joseph story's commentary on the constitution he opined that most law will remain state law because congress is only this is before this law was passed all these laws were passed in 1875 right story was writing right thank you your honor but i think his prediction has proved correct that the fact remains today as it was when this law was enacted and as was the case in joseph story's time that most election law is state law and certainly the rules of a failure to elect state law finally an overarching question in these types of cases whether there's a need for national uniformity there isn't such a need and we see that there is not national uniformity playing out in this space right now wait what do you mean there's not national uniformity 99.9999 elections occur on one day that's true national uniformity council that's true and it's also true in minnesota minnesota abides by the default election day for its elections it intended to for the second congressional district this is an exceptionally rare occurrence but but i thought your position was the only limiting principle here is that it has to be generally applicable related to election and you say it should be a bright line rule but you say we should consider rarity i'm not sure what rarity means but under your view as i understand it all 50 states could have different reasons why they postpone or cancel elections based on different weather related problems or different difficulties with the election process the health of candidates the efficiency of the campaign and so forth why wouldn't that as am i correct that's your that's the implication of your proposed rule it is your honor and i think it's the only rule that would really make sense because they're the reasons for canceling election are very idiosyncratic i mean we make the point about whether in our brief some weather events are disastrous in miami but not in minnesota and vice versa and so this the term failure to elect doesn't create a national set of judicially manageable standards for identifying when this occurs because that's really the alternative is that yeah why is it the better if there's going to be a bright line rule then why isn't the better rule just to say no state may do this that failure to elect has a meaning that's limited to flaws in determining the outcome on election day tie votes pluralities and so forth if that were true your honor then that would cut out the exigent circumstances in the case of a hurricane or another natural disaster so require additional federal legislation in that case has that ever happened since 1874 where there's been an election for the house postponed on account of there have there have been elections that have been that have been thrown out because of this i'm not aware of one postponed in advance but one could imagine it could happen for example in 9-11 new york postponed its election so they happen to be primaries that year but nothing prevented uh a terrorist attack from happening in september 2002 as opposed to 2001 and under the plaintiff's view the they would have had to go forward with elections to congress in new york and it would have been particularly perplexing because the state could have canceled all of its state and local elections but still would have been required to go forward with its federal elections and that doesn't make a lot of sense i don't think it's what congress intended and i see that i'm getting into my rebuttal time so i will step aside to please the court very well you may reserve your balance for a bubble mr elias we'll hear from you thank you your honor uh and may it please the court um 423 000 minnesotans voted in the second congressional district of minnesota in fact there was no failure to elect in fact there was a successful election throughout the state of minnesota and in that congressional district in particular i want to jump to uh what seems to be the nub of the court's questioning um at the outset the fact is there are hurricanes in in florida and they don't cancel elections the fact is that there was super storm sandy that hit new jersey and new york that was not prepared for it and was no cancellation of federal elections there have been snow storms and blizzards in alaska and they have never canceled a federal election there have been devastating floods and tornadoes and they have never postponed or canceled a federal election the fact is that the only instance that uh that appellants can point to is a three judge district court panel in new in washington dc dealing with the very rare circumstance of a conflict between the voting rights act which was an act of congress passed subsequent to the uniform election date where the three judge panel found that the election needed to be postponed by a few weeks so that georgia would not hold racially discriminatory elections in violation of the 1965 law this is not council that was affirmed by the supreme court right it was summarily affirmed yeah so no how much did the supreme court affirm of that case i the supreme court affirmed the this court is to assume it affirmed only that which was essential to its holding which its core holding i believe that with the minimal core holding is that where you have two acts of congress an act of congress in in the 1870s an act of congress in the 1960s the later act of congress has to be harmonized and that was the narrowest grounds upon which the supreme court could have affirmed that ruling with respect to the um what is your position then mr elias on the natural but are you saying that as a matter of law no state could postpone an election on account of a hurricane or a terrorist attack or other such uh disaster one one might say go ahead one might imagine and it is not it is for purposes of these this case only an imagination that you could have such a cataclysmic event that that prevented voting essentially at all in a jurisdiction that you that you would have an a natural understanding that there was a failure to elect where you know voter participation rates were in the in the single digits because there simply was no access to voting but that's not this case that's not even close to this case it would have to be single digit voting if there was a 12 percent turnout then there would be no failure to elect then i was i would postpone i think at that point there would be a different case before this court or a court to determine whether the the diminution of voting rights was so extreme that voters effectively had no ability to elect but your honor i want to point to the to a myriad of cases that were brought this election cycle citing covid as a reason to change election laws could you imagine if the state of minnesota had applied the standard that my good friend um opposing counsel articulates and says well because of covid we are going to apply a generally applicable law to use his terms and simply say no elections in state of minnesota while covid is still going on that until the cdc certifies that covid is under control there will be no elect no federal elections in the state of minnesota that would be completely implausible in fact it's so implausible that no one has no one even thought that that was a possibility and brought it to any court yet that would meet the generally applicable principle that my able uh friend and opposing counsel um uh uh has articulated well what is your rule then if you don't like his rule your rule is that the event has to be how would you articulate your single digit voting scenario to establish principle so again i want to say i i start with the plain text of the statute and its original intent which is that a uh a that that uh that there is a vacancy that is caused by a failure to elect at the time prescribed by law that is a tie that is a um uh a uh a circumstance where essentially no election is able to be held um i'm not i don't think that this court needs to venture into whether it's single digits or double digits um but it is certainly not the routine unfortunate but routine event of candidates passing away candidates pass away like all humans in in not infrequent uh times during elections and the fact is that counsel this is judge logan i don't understand why when the state if a state statute enacted well before the election in question declares that any votes cast that day will not be counted why that doesn't result on election day in a failure to elect under your honor i'm glad you asked that question because under that theory every state could opt out of the uniform election day by simply by simply passing a law in advance that says for example if more than that that's that's parading a horrible that's not true there can be constraints on on that doctrine including uh a a patent attempt to undermine section seven i i think your honor that the that the um that the the if a state of gate delegated to a um uh to an election board as for example in north carolina is the case the ability to treat exigent circumstances to include both natural disasters and epidemics or pandemics you literally would have states declaring because of covid there could be no presidential no senate and no house election during a pandemic under the standard applied by the plaintiff there is no difference between a natural disaster that is of snow or a natural disaster that is of a virus and that is simply not that would simply unwind the the fabric of the of the system that congress has put in place to require that all americans whether in sickness or in health whether they like how about death from a major party candidate or death of both major party candidates i'm sorry your your honor i was unable to hear the beginning of the question well what about what about the the state law that said in the case of of the death of one or both major of the major party candidates that everyone recognizes as major parties um why isn't why isn't that you know that that doesn't result in a failure to elect your honor i i'd answer that two ways the first is that if you read the rest of the statute the rest of section 8a it interestingly talks about death it says a failure to elect at the time prescribed by law or by the death resignation or incapacity of the of a person elected so the statute actually contemplates what's happened what happens if there is a death if there is a death of the person elected then in fact that does trigger 8a but here there was no death of the person elected there was a death of a candidate and if congress we know that we know that there was no death of a person elected the question is whether it qualifies as a failure to elect if say there's a bomb that goes off in the debate and the republican and the democrat are both killed and the only person on the ballot left is the marijuana party candidate can the state declare that's a grounds to cancel and postpone the election so i'll answer that again with with with two pieces the first is that the statute does speak to you have to read the statute as a whole and it does seem to single out death of a elected and and i think that that should influence the way the court reads the the failure to elect portion but the second uh point is that as this major as the as this uh court held in its unanimous decision uh before uh during the prior proceeding this case doesn't involve a death of either the dfl or the republican party candidate this involves the death a tragic death but the death of a candidate who in the end received 24 000 votes uh so this this court needn't answer the question of what would happen if you had either the the dfl or the uh republican party candidate that's a that's a question for another court on another day i think it would i think i think it might present a different council council state law still declared don't you can't count the votes and and a federal court decree is the only reason they were counted yes your honor and i do want to point out that the federal court decree has allowed them to be counted and those results have been well but there's the if the state law was was valid vis-a-vis sections under section seven and eight there was nonetheless a failure to elect a federal court can't trump a governing state law that way so as of november 4th there was a failure to elect and as of january there will be a vacancy and now the federal constitution and state law have all different kinds of mechanisms to deal with the such the the rare situation your honor i dare say if if this court were to take the extraordinary step of canceling an election and and saying that a state could declare a failure to elect on the death of a pro-marijuana you're not listening counsel you don't want to listen i'm not saying this court would cancel the election this court would say that under state governing state law the election did not occur if the court were to rule that this state law is applicable in these circumstances then we will no longer have uniform election days because states around america will exert their power to opt out of that date by declaring emergencies based on whether or not we're back to parading the horribles but your honor it's not a parade of horribles it's a reality there are in fact hurricanes in florida every year and no one has ever saw fit to go to a federal court and try to argue that the state could use its exigent authority which it has to alter election procedures and essentially cancel a federal election when you say no one has ever seen fit to go to a federal court has has the state of florida declared that the votes should not be certified on account of a hurricane no your honor i don't think there's no reason to go to a federal court then i i don't believe that the state of florida or any other state other than minnesota has ever attempted uh to to do what what is at issue here but certainly the state of florida would be watching and the state of florida that thought that that uh where that power is vested in the governor and the secretary of election board to declare emergencies and to have plenary authority to change election rules we will see those those those bodies exercise that authority under a neutral principle that they built that they have declared an exigency in fact the north carolina state board of election declared such exigencies to extend absentee ballot deadlines to extend other provisions of state law that has three times now and uh uh we we will assume that in the future added to the arsenal of those boards of elections and election officials will now be the authority to say you know what we think that there is an exigency due to weather an exigency due to covet an exigency due to something else and we will cancel these elections and postpone them until a future date and that will unravel the fabric that congress has put in place that we have a uniform election day for congress so that all voters are voting at the same time on the same sets of issues under the same sets of conditions so it may sound like a parade of horribles but the fact is minnesota is not unique in in facing unusual circumstances states have been respectful of congress's prerogative to to abide by the uniform election date and where this court opened the door and allowed minnesota to opt out of that for the first time uh uh it i i fear what we what what what will what will come after which will be a series of judgments that courts will have to make about whether this circumstance is really exigent whether this circumstance is really rare uh or whatnot um so so so you do you disagree completely with the opinion we put out on the stay i don't i think that the well didn't we just do what you just described i think what the court did what the court did in the stay which i think is the which i think is the proper and most prudent course at this point is to say that in this case in this case before it it needn't decide a whole bunch of other circumstances that what ifs could in this circumstance you had the death of a candidate that we now know about 24 000 votes was not in fact the candidate of choice and therefore we needn't address the question of what it would be if a uh if in fact a major party candidate passed away i've speculated as to what or not speculated i've i've offered what i think the framework might look like there but but this court needn't decide that more difficult question the question before it is quite simple which is whether or not in this election on these facts uh the the election uh results uh should not be allowed to stand well your counterpart says that's a bad approach because it gets into case specific judgments about how much snow and how many how much electoral strength and so forth a particular candidate needs before the state can declare a failure to elect do you do you think we need a bright line rule i i think the problem your honor is that we not the problem your honor we currently have a bright light room we we have a we have a rule that has governed this country well for 150 years which is we have a uniform election deadline it is the it is my my good friend's uh revision of that rule to uh to to say that any generally applicable law uh could could allow for a failure to elect that would be a radical departure from from uh from from the stability that we currently enjoy council you agree every state can adopt runoffs uh within within certain parameters yes yes well no every state could adopt runoffs don't you think under under the legislative history the footnote and and i won't tell you all the authority oh every state can adopt runoffs right for for failure to reach 50 correct yeah yeah right yeah okay so if minnesota had been real slick they would have called this a runoff some way right no because the runoff involves the top two vote getting candidates oh no no wait wait where's it say anywhere runoff has to be between the top two there you know you about you know about weighted voting we won't go there but but but it doesn't have to involve just the top two that's why i answered the question the way i did your honor is i think that that i think that foster uh uh and and miller only go so far as to talk to as to address a state's legitimate interest in wanting to make sure that there is a majority a majoritarian rule in the um in the in who gets seated i don't believe that any federal court uh i don't believe any state before we get to court i don't believe any state has attempted to offer a a articulation of a of a governmental interest other than that except in the state of of of mississippi where the state adopted a quasi electoral college rule which a federal court cast doubt on and in fact as i brought that lawsuit in fact the mississippi state constitution is being amended to change that as a result so i don't i don't i don't think that a that outside of a runoff or top two to get so that someone gets 50 a state could necessarily adopt a a runoff as simply a redo of an election well weighted voting is a redo of election and the district court up in as in maine in maine approved that the first circuit approved spring court didn't review it are you saying that weighted voting is or is not what's your position so in maine the the issue is ranked choice voting which is that yeah no candidate gets to 50 you exclude those third party candidates and essentially go to a top two by letting but by having the people's second choice and adopt so so it essentially but that's not done the day of election council that's done later uh no it's vote all the voting is done on election day it is the math the computers the computers take a few days to do the calculation if they had faster computers in maine honestly you'd allow rank voting you'd allow rank voting and you'd allow something that looks like a runoff right every state can do yes but rank choice voting again is a runoff it's essentially instant runoff voting in other words people are saying who they would run vote for in the case that neither candidate got to 50 percent um but there's no further voting that takes place yeah it's a final runoff but you and i don't need to quarrel about words you have 37 seconds go ahead well um i i do want to just point out that i do think that there would be um a that that congress's purpose in in requiring uniform election day would be implicated here where the we're allowing an election in february after the the change in political um circumstances whatever they are uh the new president new congress new uh new senate would undo congress's interest in having all voters vote at the same time on the same senate when the national issues are the same thank you your honor very well thank you mr elias mr riley we'll hear from you in rebuttal thank you your honor this is not the first time this has happened we only need to look back to 2018 where a congressional race north carolina's ninth district was thrown out after voting occurred none of the votes ended up counting in that race and it was redone 10 months later due to state law violations and the determination let's go very slowly so congress didn't exercise its powers right over that election because congress had power of that election right it's the same convene it's the same section seven power at issue here there address my question quickly don't dodge it you know about the five ones go ahead the answer is yes congress intervened in the same way it did here by setting section seven's uniform election day the state had to appeal to 8a to throw that election out and schedule a new one in september of 2019 the reason it did this was because of violations of north carolina law north carolina has chosen to make illegal a practice known colloquially as ballot harvesting which is not illegal yes of course now wait wait i don't understand because uh you you know the there are several studies that show all the many contests have been in the u.s house it says each house will be judged elections returns and qualifications did congress do anything on that election you're talking about you know they have a special committee usually to do that i'm not there or not tell me i don't think about it i don't think so your honor what thank you what i'm aware of is that the state elections board the same partisan board that mr elias referred to threw it out on the basis that there were state law violations found under mr elias's position this never should have happened it was all preempted the state was required to send the top vote getter to congress notwithstanding serious allegations of state law violations that were ended up being found to undermine that election now did he say that fraud would not be a basis to uh declare a failure to elect i thought their brief said fraud would be allowed i don't all that in their brief your honor and i don't see how that would be consistent with their position which i understand to be uh one a uh fifty percent rule wasn't satisfied or two something cataclysmic like i like i don't even really know exactly what they mean by that um and i submit that that is a textual view of the statute failure to elect doesn't just mean those two isolated dings i think it encompasses those but it by its plain terms refers to something a little bit broader which includes a case like fraud and i think here it's not just fraud it's a particular form of voting that north carolina has made a policy choice against and other states have not california doesn't determine that this form of vote gathering is unlawful and that was what triggered the investigation i think the stay stage ruling is problematic uh for a different reason which is that it would require a federal court to come in effectively after the fact and do its own determination under some type of federal standard but the question here is really whether there is an effort to evade the default election day and i would echo judge locan's point that there really is no incentive to do that the notion that there's going to be some kind of creative horribles i think is quite fantastic given that under our reading of the rule the state would have to live with its own poison it has to be willing to uh apply the same rules to all of its elections it can't simply cancel the congressional election and not some other election finally i do want to address the covid cases which are really under different theories the north carolina case which by the way allowed changes in the voting but the theory there the concern there wasn't about changing the election day predominantly but suppose the state just had a law that said in the case of a public health emergency the governor may postpone the election if minister under your view as i understand it that would be generally applicable related to an election and permissible if minnesota did that your honor it would not have a government in saint paul come january literally no legislative seats would be filled there's absolutely no incentive to do that and i see i'm running out of my time well suppose they said we'll postpone it until december wouldn't that be permissible under the rule you're suggesting i think the question would be whether it's evading the default election day your honor evading the default rule just like this statute evades the rule i don't know what you mean by evade well i think it's to change the default election day if the state is willing to go through the hassle of all of that on a generally applicable basis due to pre-existing law i and i think that it would be permissible under our reading of the statute judge locan do you have anything further apparently not okay very well then we thank both council for your arguments the case is submitted and the court will file a decision in due course thank you for attending that concludes the uh session for the this morning and the court will until further call the docket